UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

AKEEM ABDULLAH RASHEED                                                              PLAINTIFF

VERSUS                                                        CIVIL ACTION NO. 1:20CV71-LG-RPM

PELICIA HALL et al                                                                         DEFENDANTS

## REPORT AND RECOMMENDATIONS

Plaintiff Akeem Abdullah Rasheed, proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint alleging unconstitutional conditions of confinement at the South Mississippi Correctional Institution (SMCI). He alleges deliberate indifference to inmate violence and the presence of contraband that poses a risk of harm to Rasheed. More specifically, he alleges that Defendants, who are Mississippi Department of Corrections (MDOC) employees, are deliberately indifferent to various MDOC policies and procedures, which has resulted in understaffing at the prison and unrestricted gang activity. According to Plaintiff, Defendants condone the use of gangs to run the prison; and gangs are dealing in contraband. Plaintiff complains that he is being denied housing in general population. He also alleges he filed sensitive issue grievances that were not handled expeditiously or appropriately. He asks to be moved out of harm's way and placed in Unit D-1 or the Marshall County Correctional Facility. He alleges to have been surrounded and threatened by gangs. The gang activity causes him to lose sleep and suffer from anxiety. He also alleges unsanitary and unsafe conditions in the prison kitchen.

All served Defendants, other than Defendant Katherine Blount, have filed a motion for summary judgment based on Rasheed's failure to exhaust administrative remedies prior to initiating the instant litigation. Doc. [48]. Defendants assert that Rasheed failed to exhaust

administrative remedies with respect to all claims, except for those contained in a January 22, 2020, as they relate to MDOC Commissioner Pelicia Hall (through her successor Burl Cain) and SMCI Superintendent Andrew Mills. Doc. [49] at 14-16. Rasheed has not filed a response in opposition.

## Law and Analysis

### Standard of Review

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."

*John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985).  Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Failure to Exhaust**

The Court finds that the majority of Plaintiff's claims should be dismissed without prejudice based on his failure to fully exhaust administrative remedies prior to filing this lawsuit.  Plaintiff's lawsuit is governed by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e).  Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983.  *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted.  42 U.S.C. § 1997e(a).  The Fifth Circuit takes a "strict approach" to the exhaustion requirement.  *See Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008).  Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003).  Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint.  *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal".  *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement.  The grievance process must be

carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358. A properly exhausted claim is one which has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in original). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Mississippi Code grants the MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Miss. Code Ann. § 47-5-801. The MDOC has implemented an Administrative Remedy Program (ARP) through which prisoners may seek formal review of a complaint or grievance relating to any aspect of their incarceration. Effective September 19, 2010, the ARP is a two-step process. *See Yankton v. Epps*, 652 F.App'x. 242, 245 (5th Cir. 2016); *Threadgill v. Moore*, No. 3:10cv378-TSL-MTP, 2011 WL 4388832, *3 n.6 (S.D. Miss. July 25, 2011). The two-step ARP process begins when the inmate submits his written grievance to the prison's legal claims adjudicator within 30 days of the incident of which he complains. The adjudicator screens the grievance and determines whether to accept it into the ARP process. The initial screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. A

prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. If accepted, the grievance is forwarded to the appropriate official for a First Step Response. *Howard v. Epps*, 2013 WL 2367880, at *2 (S.D. Miss. 2013). If the inmate is dissatisfied with the First Step Response, he may continue to the second step by completing the appropriate ARP form and sending it to the legal claims' adjudicator. The Superintendent, Warden or Community Corrections Director issues the final ruling (the Second Step Response). If the inmate remains unsatisfied, he may then file suit in court. The ARP process is complete once the inmate receives the prison official's Second Step Response. *Gross v. Hall*, No. 3:17-cv-494-CWR-FKB, 2019 WL 4397347, at *2 (S.D.Miss. Aug. 2, 2019).

Defendants have presented uncontradicted evidence that Rasheed failed to complete exhaustion of administrative remedies with respect to most of his ARP grievances prior to filing this lawsuit. As a general matter, Rasheed's testimony regarding his efforts to avail himself of the grievance process are confused and confusing. Based on Rasheed's testimony, it appears that all his ARP grievances were rejected for a variety of reasons. *See* Doc. [45] at 13-14, 16, 19, 21-22, 24-26. There is no evidence of a completed first or second step as to any of the grievances. Although Rasheed attached 76 pages of ARP documents to his complaint, none of these demonstrate that the grievance process was completed as to any of his grievances. *See* Doc. [1-1] at 1-76. At one point, when asked at the screening hearing whether he ever filed a first step that was not rejected, Rasheed testified that he "just never received a response." Doc. [45] at 27. He simply went back and filed new grievances and stated that the "next one I filed would be the second response to" the rejected one. *Ibid.* Deciphering Rasheed's testimony and the documents attached to his complaint, it is apparent that rather than completing the grievance process he simply filed new grievances after each one was rejected or "not processed".

Rejection of a grievance at the screening phase terminates the grievance process without exhausting administrative remedies. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), report and recommendation adopted sub nom. *Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). Once a grievance is rejected, that grievance cannot proceed to exhaustion. If the deficiencies are "technical" or "matters of form," then an inmate may submit a corrected grievance within five days – and the corrected grievance, if accepted, may proceed through the process to exhaustion. *See Lane v. Morrie*, No. 4:20CV132-JMV, 2021 WL 5225630, at *2-3 (N.D.Miss. Nov. 9, 2021). There is no indication in the record that Rasheed submitted corrected grievances to cure the defects in his rejected ones; as such, he did not exhaust his administrative remedies as to any of these grievances. He has not filed a response in opposition to Defendants' motion for summary judgment and thus fails to explain how the rejected grievances should be construed as satisfying the MDOC grievance process.

At the screening hearing conducted by the undersigned, Rasheed testified that on March 15, 2018, he filed an "Emergency Request" ARP grievance. Doc. [45] at 12. In this grievance, Rasheed alleged that Defendant Blount denied him housing in general population and placed him in lockdown despite not receiving any disciplinary action. Doc. [1-1] at 2-6. He also alleged that he is being discriminated against because he is Muslim. *Ibid.* As reflected in the exhibits attached to Rasheed's complaint, ARP Director Richard Pennington rejected this ARP on April

4, 2018, because it did not meet the criteria for "emergency review." *Id.* at 7. Pennington notified Rasheed that he had five days within which to file the ARP in the regular ARP process. *Ibid.* The record contains no evidence of any additional action being taken by Rasheed with respect to this ARP. Rather, Rasheed testified that he did not file another grievance until November 7, 2018. Doc. [45] at 12-15.

On November 7, 2018, Rasheed submitted a 19-page grievance presenting numerous claims against MDOC officials, many of which relate to the claims in the instant litigation (ARP # SMCI-19-0109). Doc. [48-2] at 1, 4-22. However, the record reflects that this ARP was rejected because Rasheed demanded $98,000 in compensation. *Id.* at 1-2. Although Rasheed testified at the screening hearing that Pennington "verbally" rejected the ARP, the summary-judgment evidence reflects that in fact it was rejected in writing. Rasheed's testimony is confusing to say the least about the various grievances he filed and steps he took in the process. Regardless, based on Rasheed's testimony with respect to the November 7, 2018, ARP, it is apparent that he failed to fully exhaust the requirements of the ARP process. Doc. [45] at 20-21. He did not re-file a procedurally proper grievance. Instead, he filed yet another grievance on March 6, 2019. *Id.* at 20-21, 24.

On March 6, 2019, Rasheed filed two additional "Emergency Nature" ARP grievances. Doc. [1-1] at 32-43. He also filed a "Emergency Nature" ARP grievance on March 27, 2019. *Id.* at 54-60. Although he confusingly describes the March 6, 2019, ARP as a "second step" to a prior grievance, the record reflects that Rasheed merely filed new ARP grievances on March 6, 2019. Doc. [1-1] at 32-43; [45] at 20-21. One of these complains about how the ARP program is managed. Doc. [1-1] at 32-39. The second claims that the prison is understaffed and that officials are deliberately indifferent to the safety of unaffiliated inmates. *Id.* at 40-43. In his

7

third, he complaints about gang activity and gang violence at SMCI. *Id.* t 54-60. Rasheed testified that he simply did not receive a response to the March 2019 ARPs. Doc. [45] at 21. He did not indicate that he took any other action with respect to these ARPs. *Ibid.* Accordingly, he did not complete the ARP process.

On January 9, 2019, Rasheed filed ARP #SMCI-19-0057 requesting that the U.S. Department of Justice investigate the policies and practices of MDOC and SMCI. Doc. [1-1] at 52-53. This ARP was rejected. Doc. [1-1] at 42; [6-1] at 7. ARP Director Pennington explained that the ARP does not have the authority to compel an investigation by the U.S. Department of Justice. Doc. [1-1] at 42.

Rasheed filed on January 22, 2020, an ARP grievance regarding housing of unaffiliated inmates with gang-affiliated inmates, understaffing, and generally inadequate security at SMCI. Doc. [1-1] at 71-76. This ARP was rejected because it was the subject of pending federal litigation. *Id.* at 70. Defendants suggest that the rejection letter refers to identical federal lawsuits filed by two other inmates—Omar Humphrey and Mario Rucker. Doc. [49] at 11 (referencing *Humphrey v. Hall*, 1:19cv362-HSO-RHWR; *Rucker v. Hall*, 1:19cv901-RHWR). However, Defendants concede that the rejection of Rasheed's January 22, 2020, may have presented a procedural dead end. Doc. [49] at 11, 14-16; *see Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020). Accordingly, Defendants agree that in effect he has exhausted his official capacity claims against the MDOC Commissioner and Superintendent Andrew Mills with respect to the claims in his ARP of January 22, 2020.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Defendants' [48] Motion for Summary Judgment be GRANTED, such that Plaintiff's claims be dismissed without prejudice

based on his failure to exhaust administrative remedies, except for claims against the MDOC Commissioner and Superintendent Andrew Mills as identified in Rasheed's ARP grievance of January 22, 2020.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, and recommendations to which objects are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the District Court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 15th day of December 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE